USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 1/23/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, AND APPRENTCESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND; TRUSTEES OF THE NEW YORK CITY CARPENTERS RELIEF AND CHARITY FUND; THE NEW YORK CITY AND VICINITY CARPTENERS LABOR-MANAGEMENT CORPORATION; and THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS,

Petitioners,

v.

BAR-MAC CONSTRUCTION OF NJ INC..,

Respondent.

No. 18-CV-06284 (RA)

MEMORANDUM OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Petitioners seek confirmation of an arbitration award entered against Bar-Mac Construction of NJ Inc. Respondent has not opposed the petition. For the reasons set forth below, the petition is granted, except for a reduction in the amount of attorney's fees awarded to Petitioners.

## BACKGROUND[*]

There are four Petitioners in this action. First are the trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity, Apprenticeship, Journeyman Retraining and Educational and Industry Funds (the "ERISA Funds"), a group of employee benefit

---

[*] These facts are drawn from the petition ("Pet."); the Independent Building Construction Agreement (the "CBA"), Pet. Ex. D; the Opinion and Default Award of the Arbitrator (the "Award"), Pet. Ex. G; and the Declaration of Christopher Ozard (the audit department manager for Petitioners), Dkt. 17-1 ("Ozard Decl.").

funds subject to the Employee Retirement Income Security Act of 1974 ("ERISA"). Pet. ¶ 4. Second are the trustees of the New York City District Council of Carpenters Relief and Charity Fund (the "Charity Funds"), a charitable organization established under Section 501(c)(3) of the Internal Revenue Code. Pet. ¶ 5. Third is the New York City and Vicinity Carpenters Labor-Management Corporation, a New York not-for-profit corporation. Pet. ¶ 6. Finally, fourth is the New York City District Council of Carpenters (the "Union"), a labor organization that represents employees in industries involved in commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142, and which is the certified bargaining representative for certain of Respondent's employees. Pet. ¶ 7. Respondent is a foreign business corporation incorporated under the laws of New Jersey. Pet. ¶ 8.

On November 19, 2015, Respondent entered into a Project Labor Agreement Letter of Assent ("PLA LOA") in connection with the construction project Build It Back Brooklyn. Pet. ¶ 9. The PLA LOA bound Respondent to the Outer Borough Residential Market Recovery Project Labor Agreement (the "PLA"), which, in turn, bound Respondent to the Union's Independent Business Construction Agreement (the "CBA"). Pet. ¶ 11. The CBA requires Respondent to make contributions to certain fringe benefit funds on behalf of its employees within the trade and geographical jurisdiction of the Union. See Pet. ¶ 12; Pet. Ex. D ("CBA") art. XV § 1; Award at 2. The CBA further requires Respondent to make its books and records available for audit by the ERISA and Charity Funds. See Pet. ¶ 13; CBA art. XV § 1. Additionally, the CBA provides that either party may seek to arbitrate disputes or disagreements concerning payments related to the Funds before an impartial arbitrator. See Pet. ¶ 17; CBA art. XV § 7.

Pursuant to the CBA, on or around November 2017, Petitioners requested an audit from Respondent with respect to its contributions to the pension funds. Ozard Decl. ¶ 14. Respondent

refused to undergo an audit. *Id* ¶ 15. Christopher Ozard, the audit department manager for Petitioners, then estimated the contributions due from Respondent, using a formula agreed to by Respondent through a Revised Statement of Policy for Collection of Employer Contributions. *Id.* ¶ 17; *See* Pet., Ex. E. According to Ozard's calculations, from March 2, 2016 (when the estimated audit period began) until the time of his analysis, Respondent had failed to remit $1,901,398.65. *Id.* ¶ 21.

On November 15, 2017, Petitioner requested another audit from Respondent, and informed it that a refusal to cooperate would result in Petitioner moving forward with the arbitration. *Id.* ¶ 22. After Respondent did not reply, Petitioner sent it a "Notice of Intention to Arbitrate." *Id.*; *id.*, Ex. G.

Petitioners then began arbitration proceedings before Arbitrator Roger E. Maher, and sent Respondent a Notice of Hearing. Pet. ¶ 21; Pet., Ex. F. On May 16, 2018, the arbitrator held the hearing, at which no one appeared on Respondent's behalf. Arbitration Award at 2. The next day, the arbitrator issued an award (the "Award") in favor of Petitioners. *Id.* at 3. The arbitrator found that Respondent owed $1,901,398.65 in delinquent principal payments, interest of $147,417.40, liquidated damages of $380,279.73, as well as fees and costs, and ordered Respondent to pay $2,431,495.78. Award at 2-3.

On July 11, 2018, Petitioners brought this petition, seeking an order confirming the award and granting judgment in the amount of $2,431,495.78, plus pre- and post-judgment interest, attorney's fees, and costs. Pet. at 7. Respondent was ordered to file its opposition by September 28, 2018. Dkt. 19. It did not do so.

## STANDARD OF REVIEW

"[A]rbitration awards are not self-enforcing"; instead, "they must be given force and effect by being converted to judicial orders by courts." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006) (alteration and quotation marks omitted). Under the Federal Arbitration Act, any party to an arbitration proceeding may apply for a judicial decree confirming the award, which a court must grant unless the award is vacated, modified, or corrected. 9 U.S.C. § 9. In most cases, "confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *D.H. Blair*, 462 F.3d 95, 110 (2d Cir. 2006) (quotation marks omitted).

"The role of a district court in reviewing an arbitration award is 'narrowly limited' and 'arbitration panel determinations are generally accorded great deference under the Federal Arbitration Act.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 103 (2d Cir. 2013) (alteration omitted) (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19 (2d Cir. 1997)). Such deference promotes the "twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71–72 (2d Cir. 2012) (quoting *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008)). "[T]here is no general requirement that arbitrators explain the reasons for their award, and...an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union, AFL-CIO*, 954 F.2d 794, 797 (2d Cir. 1992) (quotation marks omitted).

"[A] district court should treat an unanswered . . . petition to confirm/vacate [an arbitration award] as an unopposed motion for summary judgment." *D.H. Blair*, 462 F.3d at 110. Summary

judgment is appropriate where the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The same standard applies to unopposed motions for summary judgment." *Trs. for the Mason Tenders Dist. Council Welfare Fund v. TNS Mgmt. Servs., Inc*, No. 16-CV-1120 (AJN), 2016 WL 6208559, at *2 (S.D.N.Y. Oct. 20, 2016). Thus, even "where the non-moving party 'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'" *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)); *see also Trs. of the Mason Tenders Dist. Council Welfare Fund v. Sukhmany Constr., Inc.*, No. 15-CV-7200 (PAE), 2016 WL 3659925, at *3 (S.D.N.Y. July 1, 2016).

**DISCUSSION**

Petitioners argue that they are entitled to confirmation of the arbitration award, pre- and post-judgment interest, and attorney's fees and costs. The Court agrees, although it reduces the amount of attorney's fees from that requested by Petitioners.

**A. Confirmation of the Arbitration Award**

On the basis of Petitioners' submissions, the Court finds that summary judgment is appropriate, as Petitioners have demonstrated that there is no material issue of fact in dispute.

First, Petitioners have presented undisputed evidence that arbitration was appropriate here. Respondent signed a letter of assent binding it to the PLA. Pet., Ex. A. In turn, the PLA obligated Respondent to pay employee benefits in accordance with the CBA. *See* Ex. B at 21, Art. 11(a) ("All employees covered by this Agreement shall be classified in accordance with the work performed and paid the base, straight time hourly wage and fringe benefit rates set forth in the

applicable Collective Bargaining Agreement in Schedule A."); *id.* at 67, Schedule A (stating that employees represented by the New York City District Council of Carpenters are to be paid in accordance with the CBA).

Article XV, Section 7 of the CBA provides, in relevant part:

> Should any dispute or disagreement arise between the parties hereto, or between the Union and any Employer member hereto, concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator . . . .

CBA art. XV § 7. The instant dispute arose between the parties because of Respondent's alleged failure to remit principal and interest payments to the ERISA and Charity Funds. *See* Pet. ¶¶ 12, 19; Award at 1-2. This dispute is clearly covered by the CBA's arbitration provision.

Second, there is no dispute that the arbitrator acted within the scope of his authority. Article XV, Section 7 of the CBA provides that the arbitrator "shall have full and complete authority to decide any and all issues" raised by a party in a notice of intention to arbitrate and "to fashion an appropriate remedy including, but not limited to, monetary damages." CBA art. XV § 7. This Award "shall be final and binding upon the parties." *Id.* Moreover, in the event that arbitration proceedings are instituted to collect delinquent fund contributions, the arbitrator is "empowered" to award "interest, liquidated damages, and/or costs." CBA art. XV § 6(b).

Here, Petitioners have submitted undisputed evidence, including a notice of the arbitration hearing and the Award itself, demonstrating that the arbitrator complied with the CBA by focusing only on the issues raised by Petitioners—namely, Respondent's delinquent payments to the fringe benefit funds. *See* Ozard Decl., Ex. K (Notice of Hearing); Award at 1-2. Petitioners have also submitted undisputed evidence, including the CBA and the Award, that the arbitrator's remedy was appropriate, as monetary damages, interest, fees, and costs are specifically identified as forms of relief available under the CBA. *See* CBA art. XV §§ 6,7; Award at 2-3. This evidence thus

establishes that the arbitrator did not exceed the scope of his authority in rendering the Award. *See, e.g., Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Best Falcon Constr. Inc.*, No. 18 Civ. 2997 (KPF), 2018 WL 6200441, at *4 (Nov. 27, 2018) (the arbitrator did not exceed the scope of his authority where, "[p]ut simply, [it] properly constructed and applied the CBA when it issued the reward").

The amount Respondent owes is also undisputed. The Award states that the arbitrator received into evidence a summary report of Petitioners' audit and testimony from Petitioners' auditor, which detail each of Respondent's delinquencies and set forth the auditor's accounting method. *See* Award at 2; Ozard Decl., Ex. F. After reviewing and considering this evidence, the arbitrator concluded that Respondent's delinquency totaled $1,901,398.65. *See* Award at 2. There is no evidence to suggest that this amount is incorrect. Nor is there any evidence suggesting that the auditor's accounting methods are unsound.

In light of the evidence submitted, Petitioners have met their burden of "demonstrating that no material fact remains for trial." *D.H. Blair*, 462 F. at 110. Accordingly, the Court confirms the Award in favor of Petitioners.

### B. Pre- and Post-judgment Interest

Petitioners request "interest from the date of the Award through the date of judgment." Pet. at 7. The decision to "grant prejudgment interest in arbitration confirmations is left to the discretion of the district court." *Ceona PTE Ltd. v. Bmt Giant, S.A. de C.V.*, No. 16-CV-4437 (WHP), 2016 WL 6094126, at *2 (S.D.N.Y. Oct. 19, 2016) (quotation marks omitted). In this Circuit, district courts have exercised this discretion "when confirming arbitration awards under collective bargaining agreements pursuant to § 301 of the LMRA, when the CBAs indicated that an arbitration award was 'final and binding.'" *Serv. Emp's Int'l Union, Local 32BJ, AFL-CIO v. Stone Park Assocs.*, LLC, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004) (collecting cases). Here,

Petitioners seek "interest to accrue at the annual rate of 5.75%," Pet. at 7, and the arbitration award is "final and binding," CBA Article XII § 2. Accordingly, the Court grants Petitioners' request for pre-judgment interest, at a rate of 5.75% per annum, from the date of the Award through the date of judgment in this action. *See, e.g., Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. AMP&G Constr., LLC*, No. 17 Civ. 4729 (DAB), 2018 WL 1883450, at *5 (March 29, 2018) (awarding Petitioner's interest accruing at the rate of 5.75% annually).

Petitioners also seek "post-judgment interest at the statutory rate." Pet. at 7. The Court grants this request as well. *See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court," and "shall be calculated from the date of the entry of the judgment.").

### C. Attorney's Fees

Finally, Petitioners seek attorney's fees and costs incurred in bringing this petition. Pet. at 7. "Ordinarily, attorney's fees cannot be recovered in a federal action in the absence of statutory authority," and the Federal Arbitration Act does not provide for attorney's fees in actions to confirm arbitration awards. *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Mountaintop Cabinet Mfr. Corp.*, No. 11-CV-8075 (JMF), 2012 WL 3756279, at *5 (S.D.N.Y. Aug. 29, 2012) (collecting cases). However, "[u]nder its inherent powers to supervise and control its own proceedings, a district court has the authority to award attorney's fees to the prevailing party when the losing party 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Eisemann v. Greene*, 204 F.3d 393, 395 (2d Cir. 2000) (quoting *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129 (1974)). In the context of a petition to confirm an arbitration award, an award of attorney's fees is permissible where "the party challenging the award has refuse[d] to abide by an arbitrator's decision without justification." *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Enrol. Union, Local 228*, 118 F.3d

8

893, 898 (2d Cir. 2007); *see also, e.g., Ceona*, No. 16-CV-4437 (WHP), 2016 WL 6094126, at *3 (awarding attorney's fees and costs to petitioner seeking confirmation of an arbitration award where the respondent "failed to satisfy the Final Award, and ha[d] not responded to [the petitioner's] petition in this action"); *Herrenknecht*, No. 06-CV-5106 (JFK), 2007 WL 1149122, at *4 (awarding attorney's fees and costs to petitioner in unopposed petition to confirm arbitration award, where respondent "offered no justification for refusing to comply with the decision of the arbitrator").

Here, Respondent has not complied with the Award, nor has it offered any justification for its failure to do so. Accordingly, Petitioners are entitled to reasonable attorney's fees and costs in bringing this action to confirm the Award. *See First Nat'l Supermarkets*, 118 F.3d at 898; *Ceona PTE*, No. 16-CV-4437 (WHP), 2016 WL 6094126, at *3.

Counsel for Petitioners submitted contemporaneous time records, reflecting all time spent and activities performed in litigating this matter. Pet. ¶ 34; *See id.*, Ex. H. In total, counsel billed $1,947.50 for their work, reflecting 7 hours of labor. Ex. H. More specifically, counsel billed the time of (1) Paige Davis, an associate attorney who graduated from law school in 2016, at a rate of $275 per hour, Pet. ¶ 30, and (2) Todd Dickerson, an attorney "Of Counsel," who graduated from law school in 2013, at a rate of $350 per hour, *id.* ¶ 31.

The Court cannot approve the rate of $275 per hour for Ms. Davis. As Judge Engelmayer recently concluded, in the context of ERISA cases, courts in this district have been reluctant to "approve[] a rate greater than $225 for an associate with experience comparable to Ms. Davis's." *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Metroplex Serv. Grp., Inc.*, No. 18 Civ. 5889 (PAE), 2018 WL 4141034, at *5 (S.D.N.Y. Aug. 30, 2018); *see id.* (collecting cases). This Court's view, like that of Judge Engelmayer's, is that "$225 represents the upper bound of

prevailing rates in this District for junior associates such as Ms. Davis." *Id.*; *see also Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. M&B Builders Grp. Inc.*, No. 1:18-cv-5074-GWH, 2018 WL 6067229, at *6 (Nov. 19, 2018) (also reducing Ms. Davis' requested rate of $275 to $225). Consequently, the Court awards a rate of $225 per hour for Ms. Davis.

The Court also declines to grant the rate of $350 per hour for Mr. Dickerson. *See Metroplex*, 2018 WL 4141034, at *6 (declining to grant a rate of $350 per hour for Mr. Dickerson). Instead, the Court grants Petitioners' fees of $300 per hour for this attorney. *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. DV I, LLC*, No. 17 Civ. 7367 (PAE), 2018 WL 461244, at *6 (S.D.N.Y. Jan. 18, 2018) (awarding Petitioners' $300 per hour for Mr. Dickerson where, as in the instant case, he served as lead counsel); *see also Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Coastal Envtl. Grp.*, No. 17 Civ. 4667 (KPF), 2017 WL 5157246, at *5 (Nov. 7, 2017) (same).

With respect to the amount of hours billed, the Court has examined the invoice submitted by Petitioner's counsel and determines that this invoice is reasonable. "It is thorough, detailed, relevant, and easy to understand, with no evident duplication of effort." *DV I*, 2018 WL 4141034, at *6.

Accordingly, the Court grants Petitioners' counsel attorney's fees in the amount of $1,597.50, reflecting the reduced rates explained above. The Court also grants the request for $75 in costs arising out of the Petition's filing, Pet. ¶ 35, which is a standard cost paid in actions brought before this Court. *See, e.g., Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Prof. Installations, Inc.*, No. 17 Civ. 4591 (DAB), 2018 WL 1801300, at *4 (March 27, 2018).

## CONCLUSION

For the foregoing reasons, the petition to confirm the arbitration award is granted. The Clerk of Court is directed to enter judgment in the amount of $2,431,495.78, plus (1) pre-judgment interest calculated at a rate of 5.75% per annum from May 17, 2018 through the date of judgment in this action and (2) post-judgment interest at the statutory rate. Petitioner is also granted $1,597.50 in attorney's fees and $75 in costs arising out of filing the Petition. The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

Dated: January 23, 2019
New York, New York

_____
Ronnie Abrams
United States District Judge